

2004R00195/KHB

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | Criminal No. 05-872(JEI) |
| v. : | 18 U.S.C. §§ 1343 & 2 |
| INTERACTIVE LOGISTICS, INC., : | I N F O R M A T I O N |
| d/b/a : | |
| NFI INTERACTIVE LOGISTICS, INC. : | |

The defendant Interactive Logistics, Inc., d/b/a NFI Interactive Logistics, Inc. ("NFI Interactive"), having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges that:

<u>COUNTS 1 - 3</u>
(Wire Fraud)

**THE DEFENDANT AND THE VICTIM**

1.  At all times material to the allegations contained in this Information:

    a.  Defendant Interactive Logistics, Inc., was incorporated under the laws of the State of Delaware, and was registered to do business as NFI Interactive Logistics, Inc., with the State of New Jersey. NFI Interactive maintained its corporate headquarters in Vineland and Cherry Hill, New Jersey. NFI Interactive was a transportation company that provided shipping services, including transportation management, dedicated transportation and warehousing services.

b. AB was a manufacturer of alcoholic beverages, including Budweiser beers, and non-alcoholic beverages. AB was incorporated under the laws of the State of Missouri, and maintained its principal place of business in St. Louis, Missouri. AB operated a brewery in Newark, New Jersey.

### THE PARTIES' CONTRACTUAL AGREEMENTS

2. On or about September 1, 2000, AB and NFI Interactive entered into a series of contracts in which NFI Interactive agreed to provide AB with transportation and logistics management and brokerage services, and transportation and shipping services. In one of these contacts, NFI Interactive agreed to transport AB's products from, among other facilities, AB's brewery located in Newark, New Jersey, to various locations in the Northeastern United States ("the Transportation Agreement"). The Transportation Agreement took effect on September 1, 2000, for a term of 3 years ending on August 31, 2003.

3. The Transportation Agreement required NFI Interactive to, among other things, provide AB with tractors and equipment for pickup and delivery of AB's products from AB's Newark facility to various other locations. NFI Interactive agreed to purchase specialized equipment, namely, tractors and trailers, exclusively dedicated to hauling AB's products (the "Dedicated Equipment"). In exchange, AB promised to pay to NFI

Interactive a fixed weekly rate for each piece of Dedicated Equipment purchased by NFI Interactive under the Transportation Agreement. The Transportation Agreement also required AB to pay NFI Interactive a fixed rate for every mile driven by NFI Interactive while hauling AB's products utilizing the Dedicated Equipment.

4. The Transportation Agreement also required NFI Interactive to enter into agreements with third-parties to "backhaul other shippers' loads" (the "Backhaul Clause"). Under the Backhaul Clause, NFI Interactive contracted to use the Dedicated Equipment to haul certain approved third-parties' loads when AB was not using, or was underutilizing, the Dedicated Equipment.

5. Pursuant to the Backhaul Clause, NFI Interactive agreed that: (1) the first $500,000 of revenue generated by NFI Interactive utilizing the Dedicated Equipment would be shared 80% to AB, and 20% to NFI Interactive; and (2) all additional backhaul revenue greater than the $500,000 would be split 75% to AB, and 25% to NFI Interactive. In addition, NFI Interactive guaranteed AB a minimum of $500,000 in backhaul revenue, or, pursuant to the above-split, $400,000, for each year of the contract (the "Minimum Guarantee").

6. On or about December 1, 2001, NFI Interactive and AB renegotiated and amended the Backhaul Clause. Pursuant to the Amended Backhaul Clause, the parties agreed that AB would receive 80% of the first $750,000 of backhaul revenue generated by NFI Interactive, and that NFI Interactive would receive the remaining 20%. The parties also agreed that AB and NFI would split backhaul revenue generated above $750,000, 75%/25%, respectively. In addition, NFI Interactive guaranteed AB $750,000 in backhaul revenue, or pursuant to the above split, $600,000, for each year of the contract (the "Amended Minimum Guarantee").

### THE SCHEME TO DEFRAUD

7. From in or about December 2001 through on or about May 11, 2004, in Camden County, in the District of New Jersey and elsewhere, defendant

**INTERACTIVE LOGISTICS, INC.,
d/b/a NFI INTERACTIVE LOGISTICS, INC.,**

knowingly and willfully devised, and intended to devise, a scheme and artifice to defraud and to obtain money and property from AB, by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice to defraud, knowingly and wilfully transmitted fraudulent invoices to AB by interstate wire that falsely understated the amounts owed to AB under the Transportation Agreement, the Backhaul Clause and Amended Backhaul Clause.

**THE OBJECT OF THE SCHEME**

8. The principal object of the scheme was for NFI Interactive to fraudulently withhold backhaul revenue covered by the Backhaul Clause and the Amended Backhaul Clause of the Transportation Agreement after meeting the Minimum Guarantee and the Amended Minimum Guarantee. NFI Interactive did so by falsely underreporting to AB the amount of such revenue generated by it while utilizing the Dedicated Equipment.

**MEANS AND METHODS OF THE SCHEME**

9. It was part of the scheme that NFI Interactive's senior executives directed the managers of the AB account to formulate and implement a scheme to withhold backhaul revenue generated by NFI Interactive utilizing the Dedicated Equipment that exceeded the Minimum Guarantee and the Amended Minimum Guarantee.

10. It was further part of the scheme that NFI Interactive's managers implemented the senior executives' directives by setting up a separate method of accounting called "the spreadsheet" for backhaul revenue not reported to AB.

11. It was further part of the scheme that NFI Interactive's managers specifically selected trips to place on "the spreadsheet" (and thereby were not reported to AB) that were unlikely to be detected by AB. Typically, they selected trips that did not have a scheduled return trip, commonly known as "one-way trips."

12. It was further part of the scheme that NFI Interactive's managers and accountants manipulated the amount of backhaul revenue reported to AB on a weekly basis in order to conceal the actual amount of backhaul revenue generated during a particular week and to create the illusion that NFI Interactive was only generating enough backhaul revenue to meet, but not exceed, the Minimum Guarantee and the Amended Minimum Guarantee.

13. It was further part of the scheme that NFI Interactive's managers transmitted or caused others to transmit electronic invoices utilizing the interstate wires from NFI Interactive's headquarters located in Vineland, New Jersey, to AB's headquarters located in St. Louis, Missouri, which falsely underreported the amount of Backhaul Revenue generated by NFI Interactive's use of the Dedicated Equipment

14. By the above means, defendant NFI Interactive defrauded AB of approximately $225,000.

**ACTS IN FURTHERANCE OF THE SCHEME**

| Count | Item Sent | Date | Origination | Destination |
|---|---|---|---|---|
| 1 | Invoice | 07/19/03 | New Jersey | Missouri |
| 2 | Invoice | 07/26/03 | New Jersey | Missouri |
| 3 | Invoice | 08/09/03 | New Jersey | Missouri |

All in violation of Title 18, United States Code, Section 1343 and 2.

*Christopher J. Christie*
CHRISTOPHER J. CHRISTIE
United States Attorney

CASE NUMBER: 05-___

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

INTERACTIVE LOGISTICS, INC.,

d/b/a

NFI INTERACTIVE LOGISTICS, INC.

# INFORMATION FOR

18 U.S.C. §§ 1343 & 2

**CHRISTOPHER J. CHRISTIE**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

KARL H. BUCH
*ASSISTANT U.S. ATTORNEY*
973-645-2779

USA-48AD 8
(Ed. 1/97)